Clyde W. Horst et al., Petitioners v. Commonwealth of Pennsylvania, Department of Labor and Industry, Respondent. In Re the Matter of: Olde Hickory Racquet Club, 2323 Oregon Pike, Lancaster, Pennsylvania.

Argued February 8, 1979, before Judges WILKIN-SON, JR., MENCER and CRAIG, sitting as a panel of three.

*Christopher W. Mattson,* with him *Barley, Snyder, Cooper & Barber,* for petitioners.

*David Haller,* Assistant Attorney General, for respondent.

OPINION BY JUDGE CRAIG, July 12, 1979:

These appeals were consolidated for argument because of the similarity of the legal issues.

Petitioners Horst et al. are the owners of an indoor tennis facility, the Hershey Racquet Club (Hershey), which is the subject of the first of these two appeals, 1874 C.D. 1977. They are also the owners of the Olde Hickory Racquet Club (Olde Hickory), which is the subject of the second appeal, 1312 C.D. 1978. The Industrial Board of the Department of Labor and Industry (Board) found both buildings to be in violation of the Fire and Panic Act, Act of April 27, 1927, P.L. 465, *as amended,* 35 P.S. §1221 et seq., and the regulations promulgated thereunder. We reverse the Board.

As required by Section 8 of the Act, 53 P.S. §1228,[1] petitioners submitted proposed construction plans for Hershey to the Department for its review. The plans were reviewed and approved by a Department plans examiner, after he had consulted with his immediate supervisor and a second plans examiner on the acceptability of the plans. The plans, as approved, showed eight tennis courts plus shower and locker facilities, and also a raised area having its floor level at an elevation higher than that of the tennis courts. That raised area, which is the subject of the present dispute, was primarily an open area, but did contain a T.V. room, a storage room, a retail area for the sale of tennis equipment, and a room containing a washer and dryer.

Construction was completed in September, 1976, at which time petitioners so notified the Department, as required by Section 9 of the Act, 35 P.S. §1229. After an inspection in December, 1976, the Department's district supervisor notified petitioners of several minor violations of the Act and Department regulations. In that letter, the district supervisor referred to Hershey as a "One-Story Building."

On March 28, 1977, the district supervisor conducted a second inspection, the results of which he set

---

[1] Section 8 states:

It shall be the duty of the owner, architect, or contractor of every building or structure, as described in this act, hereafter erected, adapted, remodeled, or altered, to submit to the Department of Labor and Industry for approval, architectural drawings, specifications, or other data showing compliance with the provisions of this act and the rules and regulations of the said department which may be promulgated for the enforcement of the provisions of this act. No such building or structure shall be erected, adapted, remodeled, or altered, until such plans have been examined and approval given by the Department of Labor and Industry. . . .

out in a letter dated April 7, 1977. In that letter he referred to Hershey as a "Two-Story Building," and found that the walls of the "second floor" must be enclosed.

Petitioners appealed to the Board from that determination by filing a petition to vacate the order, and a motion for summary judgment. The Board, after hearing, denied both the motion for summary judgment and the petition to vacate, although it did grant petitioners "waivers and/or variances," on matters not now at issue, because of their reliance on the Department's approval of Hershey's plans.

As a result of testimony at the Hershey hearing, the Department inspected Olde Hickory, and notified the owners of several minor violations, as well as finding that the "second story" must be enclosed, as in the Hershey club. The owners appealed that determination to the Board. After a hearing, the Board found Olde Hickory to be in violation as to the "second story,"[2] again granting "waivers and/or variances" on minor points not now in question.

The only real difference between Hershey and Olde Hickory was that the controversy surrounding the Hershey Club occurred before the issuance of a certificate of occupancy, which is required by Section 9 of the Act. The Olde Hickory club had already been issued such a certificate of occupancy at the time of the May, 1977 inspection.

The parties view the issue in both cases as being whether the raised platforms in both clubs constitute mezzanines, which do not have to be enclosed, or second stories, which must be enclosed by fire resistive walls.

However, we need not and do not decide here whether the raised platforms in these two clubs were mez-

---

[2] In both cases, the Board relied on 34 Pa. Code §37.236 for guidance. However, that section begs the question, because it applies only to projections which are enclosed.

zanines or second stories,[3] because the real issue is the effect of the Department's approval of the plans for the Hershey club, and its issuance of a certificate of occupancy for the Olde Hickory club.

The Department's own regulations are dispositive; 34 Pa. Code §37.24 states:

> Final plans approved by the Department shall be valid for a period of two years after the date of approval. After issuance of final approval by the Department changes will not be required by the Department during or after construction, if the building is constructed in accordance with the drawings as far as the requirements of the Department are concerned and if the final approval was issued without connivance or fraud and if the occupancy originally is not changed.

Although the term "final approval" is not defined, a plain reading of the regulation requires us to find that Hershey's plans have been given final approval. This is particularly so because of the statement in the above regulation that changes will not be required *after* issuance of final approval but *during* construction.

Olde Hickory's situation is even more clear-cut. Not only does the regulation apply, but so does Section 9 of the Act, which states:

> Before any building or structure hereafter erected, adapted, remodeled, or altered shall be used or opened for occupancy, the owner thereof shall notify the Department of Labor and Industry of the completion of the erection, adaption,

---

[3] We note, however, that 34 Pa. Code §37.1 in its definition of "balcony" considers a mezzanine floor as a story only if it extends over 33 percent or more of the horizontal area within a building, and the records are clear that the raised areas at issue here do not attain that extent.

remodeling, or alteration of the said building or structure. *If the Department of Labor and Industry finds, after proper investigation, that the building or structure complies with the requirements of this act, and the rules and regulations promulgated for the enforcement of the provisions of this act, then the said department shall issue to the owner of the building or structure a permit authorizing the occupancy or use of the building or structure.* (Emphasis supplied.)

Therefore, in order for the Department to have issued the certificate of occupancy, the Act and the regulations must have been met to the satisfaction of the Department. Since the date of the issuance of the certificate of occupancy, neither the Act nor the regulations cited by the Board and the parties as applicable to this case have been changed. Nor was there any evidence that either building has been altered since the approval of the plans. Therefore, the Department's change of requirements can only be explained by a change of management personnel or policy. That is not enough to justify reclassifying buildings or plans which have already been approved as being in compliance with the Act.

We do not question the Department's right to make reasonable requirements and regulations regarding what constitutes a mezzanine or a second floor. Our decision only reflects our belief that the Department must be consistent.

Therefore, because the Board erred as a matter of law, we reverse, and remand to the Department for action consistent with this opinion and with its original approval of the plans of both buildings.

ORDER

AND Now, this 12th day of July, 1979, the order by the Industrial Board of the Department of Labor and

Industry, in the case of Hershey Racquet Club, order No. 305-12761, of August, 1977, and the order in the case of Olde Hickory Racquet Club, order No. 564-BL-S, dated May 23, 1978, are reversed, and the cases are remanded to the Department of Labor and Industry for action consistent with this opinion.